IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HAMID FRANK RIASATI,

      Plaintiff,

  v.                                                                      Civ. No. 22-358 SCY/LF

DANISH SALIM,

      Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO DISMISS**[1]

Plaintiff Hamid Frank Riasati brings this voidable-transaction lawsuit against Defendant Danish Salim concerning real property in New Mexico, seeking to avoid[2] the transfers and allow Plaintiff to levy on the property or on the proceeds of the sale of the property. Defendant filed this Motion To Dismiss Counts 1-5 For Failure To State A Claim, Doc. 18, arguing that Plaintiff fails to state a claim for voidable transaction. For the reasons explained below, the Court denies the motion.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief. "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct all proceedings and to enter an order of judgment. Docs. 9, 15, 16.

[2] In this context, "avoid" and "void" are synonyms. Black's Law Dictionary (11th ed. 2019) (entry for "avoid"). "Because this legal use of *avoid* can be easily confused with the ordinary sense of the word, the verb *void* is preferable." *Id.* However, because the relevant statute uses "avoid," *e.g.* NMSA § 56-10-21(A)(1), so does this opinion.

2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). The court's consideration, therefore, is limited to determining whether the complaint states a legally sufficient claim upon which the court can grant relief. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *See Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Nor is the court required to accept as true legal conclusions that are masquerading as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must, however, view a plaintiff's allegations in the light most favorable to him. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

## **DISCUSSION**

The Court takes the following facts from Plaintiff's operative complaint, which the Court assumes are true for the purposes of the present motion and which the Court views in the light most favorable to Plaintiff. In 2011, Plaintiff obtained a civil judgment in Georgia against Mohammad Salim. Sec. Am. Compl., Doc. 13 ¶ 10 ("complaint"). Most of the judgment has not been paid. *Id.* ¶ 13. In the present suit, Plaintiff seeks to collect on this debt as it relates to the value of three pieces of real property: the Farmington Home, the Empty Lot, and the La Plata Drive Home. Defendant moves to dismiss the complaint as it relates to all three of these properties. The Court discusses each in turn.

A. <u>Farmington Home</u>

"On November 30, 2017, Mohammad Salim indirectly purchased a home in San Juan Country Club Estates, located at 6415 Tear Drop Court, Farmington, New Mexico" ("Farmington Home"). Doc. 13 ¶ 14. "Title to the Farmington Home was held by FUELCO US, LLC" ("Fuelco"). *Id.* ¶ 16. Mohammad Salim "was associated or affiliated with" Fuelco. *Id.* ¶ 17. "From at least December 2017 to present, Mohammad Salim and his family have resided in the Farmington Home. He has continuously retained control of the property, and paid all costs associated with the home, including utilities, homeowners association dues, landscaping, maintenance, and property taxes." *Id.* ¶ 18.

Mohammad Salim "directed" Fuelco to quit claim the Farmington Home's title to his son, Danish Salim, which it did on July 30, 2019. *Id.* ¶¶ 20-21. Danish Salim paid no money to his father for the home. *Id.* ¶ 2. Danish Salim did not give reasonably equivalent value to Fuelco for the home. *Id.* ¶ 22. At the time of the transfer, Mohammad Salim was insolvent. *Id.* ¶ 28. The Farmington Home's value, assessed by San Juan County, is approximately $451,000. *Id.* ¶ 30.

Counts 1 and 2 of the complaint are brought pursuant to the Uniform Voidable Transactions Act ("UVTA"), NMSA § 56-10-18 (voidable transaction) and § 56-10-19 (constructive voidable transaction).[3] Both sections state that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor" under certain circumstances. NMSA §§ 56-10-18(A), 56-10-19(A). Defendant moves to dismiss these Counts, arguing that the complaint does not allege that the "debtor" (Mohammad Salim) made a transfer. Doc. 18 at 5-6. Defendant

---

[3] Prior to 2015, the Act was titled the "Uniform Fraudulent Transfer Act" ("UFTA"). The parties dispute whether the UFTA or the UVTA apply to the present claims, Doc. 18 at 4; Doc. 19 at 4 n.1, but do not point to any differences between the two acts that are material to the present motion. The Court therefore does not find it necessary to decide this issue and will cite to the current version of the statute for simplicity.

contends that, instead, the complaint alleges that Fuelco made the transfer in question. *Id.* The complaint does not allege that Fuelco is a debtor of Plaintiff. Under this logic, there is no "transfer made . . . by a debtor" to satisfy the elements of the statute. NMSA §§ 56-10-18(A), 56-10-19(A).

Plaintiff counters that Mohammed Salim had an equitable interest in the property when Fuelco owned it, which he then caused to be transferred, or indirectly transferred himself, to Danish Salim without receiving reasonably equivalent value in exchange. Doc. 19 at 4. As Plaintiff notes, the statute defines "transfer" as:

> every mode, direct *or indirect*, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset *or an interest in an asset* and includes payment of money, release, lease, license and creation of a lien or other encumbrance.

NMSA § 56-10-15(P) (emphasis added). Case law on the subject also weighs in Plaintiff's favor. "[M]any states . . . have found that a 'transfer' may occur even if the debtor was not a party to, or did not carry out, the transfer." *U.S. Cap. Funding VI, Ltd v. Patterson Bankshares, Inc.*, 137 F. Supp. 3d 1340, 1366 (S.D. Ga. 2015).[4]

Further, in an analogous context—bankruptcy discharge law—courts have explained:

> Distinctions between a bankrupt debtor's legal title (or rights) and those of a separate individual or entity have been found to be unavailing when the debtor is shown to have had an equitable interest in property held nominally by a third party. Courts have found an equitable interest where a debtor transfers or allows a third party to assume legal title under suspicious circumstances such as after a debtor has suffered a money judgment or otherwise is under financial pressure, but nevertheless retains attributes of beneficial ownership.

---

[4] *See, e.g.*, *Dwyer v. Meramec Venture Associates, L.L.C.*, 75 S.W.3d 291 (Mo. Ct. App. E.D. 2002); *Magliarditi v. TransFirst Grp., Inc.*, 450 P.3d 911 (Nev. 2019); *Thompson Properties v. Birmingham Hide & Tallow Co.*, 839 So. 2d 629, 634 (Ala. 2002); *U.S. Cap. Funding VI, Ltd v. Patterson Bankshares, Inc.*, 137 F. Supp. 3d 1340, 1366-67 (S.D. Ga. 2015); *Sherry v. Ross*, 846 F. Supp. 1424, 1428 (D. Haw. 1994); *In re McCallan*, 637 B.R. 631, 645 (Bankr. M.D. Ala. 2022); 37 C.J.S. Fraudulent Conveyances § 21.

*In re Bellassai*, 451 B.R. 594, 600 (Bankr. S.D. Fla. 2011) (cleaned up); *see also In re Ritchie*, 543 B.R. 311, 319-20 (Bankr. D.N.M. 2015) (discussing "a transfer of title coupled with retention of the benefits of ownership" as a "hallmark" of fraudulent concealment and sham transactions). In other words, the allegation that Mohammed Salim resided in the property and used it as his own, if true, demonstrates that he had an interest in the property, regardless of whether Fuelco held the legal title.

In reply, Defendant does not contest that Plaintiff's equitable interest/beneficial ownership theory is a method of stating a claim under the UVTA. Instead, Defendant argues that "the Second Amended Complaint does not allege that this beneficial interest arose before the Farmington Home was transferred to D. Salim" and that "there is no factual support alleged for the bald allegation that M. Salim held a beneficial interest in the Farmington Home." Doc. 20 at 2-3. The Court disagrees. Plaintiff alleges in paragraph 14 of the complaint that Fuelco purchased the home on November 30, 2017, and paragraph 18 states Mohammed Salim has lived in the home for his own personal use from December 2017 to the present. Paragraph 21 states that the home was transferred to Danish Salim by quit claim deed, signed on July 30, 2019, and recorded on August 12, 2019. The complaint plausibly alleges that Mohammed Salim has used, and therefore had an equitable interest in, the property ever since Fuelco bought it and well before Danish Salim acquired title.

Defendant also contends that the allegations do not meet the heightened pleading standard for fraud under Rule 9(b). Doc. 20 at 2-3. "The Tenth Circuit has not addressed whether this standard applies to claims under [the Uniform] Voidable Transactions Act." *Hanks v. Anderson*, No. 19cv999, 2021 WL 6428041, at *8 (D. Utah Dec. 16, 2021), *report and recommendation adopted*, 2022 WL 111160 (D. Utah Jan. 12, 2022); *see also* Kenneth C.

Kettering, *The Uniform Voidable Transactions Act; or, the 2014 Amendments to the Uniform Fraudulent Transfer Act*, 70 Bus. Law. 777, 806-11 (2015) (article written by the architect of the amendments, explaining that the UVTA is not a "fraud" statute "in the modern sense of the word," and that Rule 9(b) therefore should not apply to claims brought under the Act).

Even assuming Rule 9(b) applies, however, Defendant's argument fails. Defendant contends the complaint must set forth "when the allegedly fraudulent transfers occurred, the sale price and market value of the properties, and how Plaintiffs were damaged by the allegedly fraudulent transfers." Doc. 20 at 3 (quoting *Kranz v. Koenig*, 240 F.R.D. 453, 456 (D. Minn. 2007)). But the complaint *does* set forth these elements: The quit claim deed to the Farmington Home was signed on July 30, 2019 and recorded on August 12, 2019; the sale price was zero; the market value of the property was approximately $451,000; and Plaintiff was damaged because he has been hindered in collecting on a judgment debt. Doc. 13 ¶¶ 2, 21, 22, 23, 26, 30.

      B.    <u>Empty Lot</u>

According to the complaint, "Mohammad Salim indirectly purchased an empty lot in the San Juan Country Club Estates, near the Farmington Home," at 6409 Tear Drop Court, Farmington, New Mexico ("Empty Lot"). Doc. 13 ¶ 37. The lot was sold by Brian and Maurice Hesser. Doc. 13 at 26 (exhibit 3). Mohammed Salim "directed the Empty Lot's title to be held by his son, Danish Salim." *Id.* ¶ 38. "Mohammad Salim provided the money, directly or indirectly, to purchase the Empty Lot." *Id.* ¶ 40. "Danish Salim did not pay value to his father, Mohammad Salim, for the title to the Empty Lot." *Id.* ¶ 41. "During December 2020, Danish Salim sold, and transferred title to, the Empty Lot" to Jeffrey A. Gilmore. *Id.* ¶ 45; *see also* Doc. 13 at 27-28 (exhibit 4).

As related to transfer of the Empty Lot, the complaint brings Count 3 (voidable transaction) and Count 4 (constructive voidable transaction) against Defendant under NMSA

§§ 56-10-18 and 56-10-19. Defendant moves to dismiss both of these Counts. Defendant argues that "[t]he transfer Riasati seeks to avoid in Count 3 of the Complaint is the sale of the Empty Lot" to Gilmore, referred to in paragraph 45 of the complaint. Doc. 18 at 6. But, says Defendant, the sale of the empty lot from Danish Salim to Gilmore is not a "transfer made . . . by a debtor" because the complaint does not allege that Danish Salim is a debtor. *Id.*

Defendant misreads the complaint. The transfer Plaintiff seeks to avoid is the transfer of equitable interest in the property from Mohammed Salim to Danish Salim as described in paragraphs 37 to 44 of the amended complaint. Doc. 19 at 9. Plaintiff does not seek to avoid the transfer from Danish Salim to Gilmore. To support his reading of the complaint, Defendant refers only to the relief sought. Doc. 13 at 9, ¶ c ("Enter judgment against Danish Salim in an amount equal to the value of the Empty Lot at the time he sold and transferred it"). This does not alter the Court's analysis. It is simply the relief requested if the Court orders avoidance of the transfer made by Mohammed Salim to Danish Salim. *See In re Darin*, 631 B.R. 301, 305-06 (Bankr. W.D. Mich. 2021) ("a creditor in a proper case may sue *transferees* of its debtor and recover the property transferred *or its value*, capped at the amount of the creditor's claim against its debtor") (emphasis added); *see* NMSA § 56-10-21 (statutory remedies). Danish Salim is the transferee of the debtor, Mohammed Salim, and Plaintiff seeks to recover the value of the property transferred. Defendant is therefore incorrect that this request for relief necessarily indicates that Plaintiff is seeking to avoid the transfer to Gilmore.

Defendant next argues that if Plaintiff seeks to avoid the transfer of legal title from the Hessers to Danish Salim, then Plaintiff still fails to state a claim. Defendant argues that Count 3 "does not allege that the sale of the Empty Lot was made with actual intent to hinder, delay or defraud any creditor of the debtor, as required under NMSA § 56-10-18(A)(1)." Doc. 18 at 6.

7

While it is true that § 56-10-18(A)(1) requires specific intent as Defendant describes, Defendant cites no authority holding that this allegation must be included in a complaint in this exact manner. The statute provides that the requisite intent can be demonstrated by a variety of factors, such as: the transfer or obligation was to an insider; the transfer or obligation was concealed; the debtor removed or concealed assets; the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; and the transfer occurred shortly before or shortly after a substantial debt was incurred, among other things. NMSA § 56-10-18(B). The complaint alleges these factors. Doc. 13 ¶¶ 1, 2, 38, 39, 41. These allegations suffice to put Defendant on notice of the grounds of the claim.

Defendant also brings a similar argument to the one rejected above: because the Empty Lot was nominally transferred from third parties (Brian and Maurice Hesser) to Danish Salim, Plaintiff does not state a claim based on a "transfer made . . . by a debtor." Doc. 18 at 7. The Hessers, the argument goes, are not debtors of Plaintiff. *Id.*

As with the Farmington House, Plaintiff argues that Mohammed Salim acquired an equitable interest in the Empty Lot by paying for it with his money. *In re Gordon*, 526 B.R. 376, 385-86 (B.A.P. 10th Cir. 2015) (concealment of debtor's property from creditors found where assets were purchased from third parties and legal title given to the debtor's wife, but the debtor's funds had contributed to the purchase); *In re Ogalin*, 303 B.R. 552, 558 (Bankr. D. Conn. 2004) (transfer of "*equitable* property interests" in order to conceal property from creditor occurred where debtor "divert[ed] the fruits of [the debtor's] industry to. . . family members" even though the debtor never held legal title to or legal interest in the property). Mohammed Salim transferred that equitable interest to his son without receiving reasonably equivalent value. Doc. 19 at 9-10. Mohammed Salim, not the Hessers, is the debtor in question making the transfer

of equitable interest in an asset. The Court therefore rejects Defendant's argument for the same reasons stated above with respect to the transfer of the Farmington Home from Fuelco to Danish Salim.

In reply, Defendant argues that the complaint fails to state a claim because "there are no facts supporting the allegation that M. Salim provided the money to purchase the Empty Lot, such as how much money was provided, how it was provided, or when it was provided." Doc. 20 at 5. The Court rejects this argument for two reasons. First, to the extent this argument deviates from the arguments Defendant raised in his opening brief, Defendant waives the argument by raising it for the first time in reply.[5]

Second, the complaint does allege facts about the purchase of the Empty Lot. Regarding who purchased the lot, the complaint avers that "Mohammad Salim indirectly purchased [the] empty lot" and "provided the money, directly or indirectly, to purchase the Empty Lot." Doc. 13 ¶¶ 37, 39. Although the complaint does not allege exactly how much money Mohammad Salim provided to purchase the lot, it provides an approximate value of the lot by alleging, "At the time of the transfer, the Empty Lot's assessed value, determined by San Juan County, was approximately $60,000." *Id*. ¶ 44. Regarding when the Mohammad Salim provided the money to purchase this lot, the complaint alleges it was "shortly after the home purchase" (*id*. ¶ 1), which the complaint alleges occurred on November 30, 2017 (*id*. ¶ 14). Defendant neither provides argument nor cites any authority to satisfy his burden of persuasion that the complaint fails to

---

[5] *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief. The reasons are obvious. It robs the appellee of the opportunity to demonstrate that the record does not support an appellant's factual assertions and to present an analysis of the pertinent legal precedent that may compel a contrary result. The rule also protects this court from publishing an erroneous opinion because we did not have the benefit of the appellee's response.").

state a claim with regard to the Empty Lot.

      C.      <u>La Plata Drive Home</u>

During May 2018, Mohammad Salim, with another individual, co-purchased a residential property at 701 La Plata Drive, Farmington, New Mexico ("La Plata Drive Home"). Doc. 13 ¶¶ 53-54. On June 7, 2018, Mohammad Salim transferred his fifty percent portion of the property's title to his son, Danish Salim. *Id.* ¶ 56. "Danish Salim did not pay fair value for this transfer." *Id.* ¶ 57. The property is being rented, with the rent paid to Danish Salim and his co-owner. *Id.* ¶¶ 61-62. Count 5 brings a claim of fraudulent transfer for the La Plata Drive Home under NMSA § 56-10-18.

Defendant's only argument for dismissal is identical to the one rejected above for the Empty Lot: that the complaint does not allege that "M. Salim acted with actual intent to hinder, delay or defraud any of his creditors when the transfer took place, as required by § 56-10-18(A)(1)." Doc. 18 at 8. As explained above, the Court rejects this argument because Defendant is on notice of the basis of the state-of-mind allegation, given the paragraphs in the complaint related to the elements listed in § 56-10-18(B) (statutory factors used to assess the relevant state of mind).

## CONCLUSION

The Court DENIES Defendant's Motion To Dismiss Counts 1-5 For Failure To State A Claim, Doc. 18.

                                              */s/ Steve Yarbrough*
                                              STEVEN C. YARBROUGH
                                              UNITED STATES MAGISTRATE JUDGE